[Civ. No. 10992. Second Appellate District, Division One.—November 27, 1936.]

WILLIE W. HAYMAN, Respondent, v. CITY OF LOS ANGELES et al., Appellants.

Ray L. Chesebro, City Attorney, and Frederick von Schrader, Assistant City Attorney, for Appellants.

C. B. Conlin and E. R. Simon for Respondent.

SHINN, J., *pro tem.*—The peremptory writ of mandate directed to be issued by the judgment, which was granted on the pleadings, ordered respondents City of Los Angeles, Civil Service Commission of said city, and the Board of Public Works of said city to restore and reinstate petitioner to a position theretofore held by him under the classified civil service of the City of Los Angeles as a motor truck driver in one of the city departments.

It was shown by the petition that on March 1, 1935, petitioner was served with notice of suspension for thirty days. On March 7th, he demanded in writing an investigation of the grounds of his suspension, and on that day he received from the Civil Service Commission a letter acknowledging receipt of his demand for an investigation and notifying him that at a meeting held March 6th, an order had been made that an investigation of his suspension should be made. The letter also stated, ''At the same meeting there was submitted Notice from the Board of Public Works of your discharge to be effective March 1st.'' On March 8th, he was notified in writing by the Civil Service Commission as follows: ''With further reference to your recent request for an investigation into suspension from the position of Motor Truck Driver, Bureau of Engineering, Commissioner Sunday is making that investigation and asks that you be in this office for an interview at 11:00 A. M. on Monday, the 11th.'' Petitioner appeared at the office of the commission on March 11th. On March 14th, he received notice that after an investigation of his suspension *and discharge* a resolution was adopted sustaining the discharge.

In the petition it was alleged that the letter of March 14th, notifying him that his discharge had been sustained

by the commission was the only notice of any kind which plaintiff had ever received notifying him of his discharge, and that no other notice thereof had ever been delivered to him personally and none had been left at his last known place of residence. If these allegations were true, there was a failure to comply with the provisions of the city charter which lay down the procedure to be followed in discharging a civil service employee. The charter provides as follows: " . . . no person in the classified civil service of the city, other than an unskilled laborer employed by the day, shall be removed, discharged or suspended except for cause, which shall be stated in writing by the board or officer having the power to make such removal, discharge or suspension, and filed with the Board of Civil Service Commissioners, with certification that a copy of such statement has been served upon the person so removed, discharged or suspended, personally, or by leaving a copy thereof at his last known place of residence if he can not be found. Upon such filing such removal, discharge or suspension shall take effect."

By their answer respondents set out a copy of a notice of the discharge of petitioner from his position, dated March 1, 1935, (which, incidentally, is the same date as the date of the notice of suspension) signed by the city engineer, by E. G. Evans, personnel director, attached to which notice, as set out in the answer, was a certificate reading as follows: "I hereby certify that a copy of the foregoing statement was served on said..........on the 6 day of March, 1935, at 11:25 o'clock (a. m.) (p. m.) personally. (If person cannot be found strike out 'personally' and fill out the following:) by leaving same at (his) (her) last known place of residence, to-wit: 1706 E. 22nd St..........for the reason that (he) (she) could not be found. (Signature) O. C. Sutton." While there was a general denial by answer that petitioner had not received notice of the discharge, that answer was qualified by the specific allegations of the answer which relied upon the foregoing certificate as evidence of the service of notice.

The trial court held that the certificate was insufficient, as proof of the giving of notice, to comply with the charter provision which we have quoted. We entertain the same view. A proper construction of the charter provision which requires certification is that the certificate should show in what manner the service was made, whether personally or by

leaving the same at the last-known place of residence of the employee. The certificate in question was fatally defective in this respect. It will be noticed also that it was defective in failing to contain the name of the employee or the city in which the premises "1706 E. 22nd St." were located. Whether the latter defects rendered the certificate void need not be decided. Its nullity as evidence of service is sufficiently shown by the failure to state the manner in which service was claimed to have been made.

That the filing of a proper certificate is jurisdictional was decided in *Shannon* v. *City of Los Angeles,* 205 Cal. 366 [270 Pac. 682]. It was there said, in construing the same charter provision of the City of Los Angeles, "A vital and inseparable portion of the written notice provided for in section 112 (a) of article IX of the city charter is the certification to be attached thereto showing the required service thereof upon the person affected by the discharge; and it is only upon the transmission of such notice with its appended certification that the discharge or suspension of a civil service employee provided for in said section becomes effectual for any purpose." Defendants appear to contend that petitioner was properly discharged because he had actual notice of his discharge through a letter from the Civil Service Commission dated March 7, 1935, notifying him that there had been submitted from the Board of Public Works a notice of petitioner's discharge, to be effective March 1st, and that in response to a notice from the commission petitioner appeared before the commission for an interview on March 11th. However, petitioner could not have been discharged by a notice from the Civil Service Commission, and his appearance before the commission on March 11th was in response to a notice that he should then submit to an interview, not in connection with his discharge, but in connection with his suspension. Upon this point we quote further from *Shannon* v. *City of Los Angeles, supra.* "The oral statement made to the petitioner by the respondent Backus to the effect that he was discharged was ineffectual for any purpose since mere knowledge of a fact regarding which formal notice is expressly required cannot be held to be a substitute for such service. (*Chaplin* v. *Superior Court,* 81 Cal. App. 367 [253 Pac. 954].) Neither would the transmission by said Backus to the Board of Civil Service Commissioners of the written notice of the

petitioner's discharge, however regular in the form of such notice, become effectual to accomplish such discharge unless and until the further provision of the charter requiring service of such notice and designating the form and method of such service should have been complied with." Not only was it held that the giving of notice as required by the charter is mandatory and jurisdictional and that actual knowledge is not a substitute for written notice, but it was further held that until there has been a valid discharge, an essential part of which is proper certification of service of the statement of grounds of discharge, the Civil Service Commission is without authority to make any valid order in the premises. The order of the commission purporting to sustain petitioner's discharge was therefore without effect.

 Another reason assigned by the trial court for the judgment was that the grounds set forth in the statement of discharge were wholly insufficient and did not constitute a legal cause for which petitioner could be discharged. The grounds stated in the notice of discharge were as follows: "Continuing to attempt to cause dissension among employees of the Refuse Collection Division by circulating a handbill protesting against the book of rules adopted by the Board of Public Works for the conduct of employees of said division." In the answer of defendants is found a copy of the handbill alleged to have been circulated by petitioner, from which it appears that petitioner, as president of Los Angeles City Motor Vehicle Operators' Benefit Association, was soliciting all city truck drivers to join the association and to cooperate in an agitation regarding wages, pay for overtime work, provision for locker rooms and baths, compensation with which to purchase insurance, and further to protest the rules of the Department of Public Works governing operators of city trucks. In the notice of discharge the acts of petitioner were characterized as a continuance of attempts to create dissension among the employees. It is the position of petitioner that his discharge was groundless; that nothing was contained in the statement which tended in any way to show his unfitness to continue in his employment nor anything that was detrimental to the service. He characterizes the statement of the reasons for his discharge as a mere subterfuge to conceal an arbitrary and capricious action of the city engineer in dismissing him. He seeks to

justify his activities upon the ground of his constitutional right of freedom of speech and assembly. The right which is involved here is not that which petitioner thinks has been denied him, but is the right of respondents to exercise a reasonable supervision over city employees, to the end that proper discipline may be maintained and that activities among employees be not allowed to disrupt or impair the public service. Such is not only the right but the duty of the city and its several departments. In the exercise of this duty they must be allowed a wide discretion and their acts are not subject to review by the courts until they have reached the point of illegality. We do not see how it could be said that it appears from the pleadings in the case that the action of the city engineer was capricious and arbitrary and that petitioner was dismissed without cause. If petitioner's activities had a tendency to create dissension and unrest among the city employees and to interfere with the enforcement of reasonable rules of conduct prescribed by the Board of Public Works, it is not for the courts to declare that a dismissal based upon these facts would be without cause and therefore without authority under the charter of the city. The grounds stated for petitioner's discharge were not legally insufficient. The implications from the facts stated in the notice of discharge tend to deny rather than to support petitioner's claim that the action was arbitrary. The presumption of law is that official duty has been properly performed, and such presumption is applicable to impute good faith to the action of the city engineer in dismissing petitioner. There was no showing before the court that the dismissal was groundless; the presumption is to the contrary and the facts stated were, in our opinion, sufficient, if borne out by an investigation of the Civil Service Commission, to have warranted an affirmance of the dismissal. The judgment in petitioner's favor therefore cannot be sustained upon the ground that the attempted dismissal was without cause.

Respondents by their answer alleged that "continuously since March 14, 1935, petitioner's former position as motor truck driver in the division of engineering has been filled by one or more other employees, and there is no vacant position as motor truck driver to which petitioner could be assigned." They rely upon this allegation of the answer and upon the fact that the petition for writ of mandate was not

filed until December 9, 1935, some nine months after petitioner had notice that he had been discharged, as establishing laches on the part of petitioner which bar him from the right of reinstatement. No facts were alleged in the petition which would excuse a delay of nine months in the institution of this proceeding. It was alleged that at various times petitioner demanded that he be reinstated, but it was alleged also that defendants at all times refused to reinstate him. He was not encouraged to believe that he would be reinstated nor was he dissuaded from resorting to legal action by any promises or any conduct of defendants. The law is well settled that one who seeks the remedy of *mandamus* to compel his reinstatement to a civil service position from which he has been dismissed must act promptly. (*MacMullan* v. *Kelly*, 19 Cal. App. 700, at 709 [127 Pac. 819], quoting from Merrill on Mandamus, sec. 87; *Doan* v. *City of Long Beach*, 130 Cal. App. 526 [20 Pac. (2d) 777]; *Harby* v. *Board of Education*, 2 Cal. App. 418 [83 Pac. 1081]; *Donovan* v. *Board of Police Commrs.*, 32 Cal. App. 392 [163 Pac. 69]; *Cahill* v. *Superior Court*, 145 Cal. 42 [78 Pac. 467]; *Kramer* v. *Board of Police Commrs.*, 39 Cal. App. 396 [179 Pac. 216].) In none of these cases was as short a period as nine months held to be so excessive as to bar the relief sought upon the ground of laches. But in these cases our courts have cited with apparent approval decisions of New York courts holding delays of from four to eight months to be excessive. To the same effect are *People* v. *City of Chicago*, 147 Ill. App. 591, and *People* v. *City of Chicago*, 148 Ill. App. 96. But the defense of laches involves much more than the element of delay. It is not the lapse of time so much as it is the consequences of the delay which goes to make up the defense of laches. Unless prejudice results from the delay the defense is not established, but if prejudice has resulted, the one whose prompt action would have forestalled it can avoid the responsibility only by showing that he sought his remedy promptly. It is to be presumed that where one has been dismissed from an active position in the public service someone else has been chosen to take his place. The work has to be done and it has to be paid for. It appears from the answer of defendants that ever since petitioner's discharge his position has been filled by one or more of the other city employees, and that there was at

the time of the filing of the petition no vacant position in the department to which petitioner could be assigned. If petitioner should be reinstated, he no doubt would lay claim to the salary which he would have earned except for his discharge, or for so much thereof as he might be able to claim under charter provisions which require the filing of claims with the city within six months after the accrual of the demand. Whatever he might receive would be for services which he had not rendered but which had been performed by others, who had been compensated therefor. The city would thereby be prejudiced. In this connection see *Donovan* v. *Board of Police Commrs., supra,* at page 400. It is precisely for such reasons as these that unnecessary and unexcused delay will bar relief which, if applied for promptly, would have been granted. The rule is founded in sound public policy and its application prevents inequity and injustice. It is applicable to the facts disclosed by the pleadings in the present case. We do not hold that a delay of nine months in filing the petition convicts petitioner of laches as a matter of law. Each case where the defense of laches is asserted must be judged upon its own facts. But we do hold that there was such a delay in the institution of this proceeding as, if unexcused, would preclude plaintiff from obtaining the relief he seeks. Upon the pleadings as they now stand, a statement that petitioner has acted promptly would be unsupported in law or in fact. The facts as alleged show that his action has been dilatory. For this reason the judgment must be reversed. Petitioner should be allowed an opportunity by an amended petition to show some valid excuse for his delay in instituting this proceeding. If he should be unable to do so he will not be entitled to a judgment reinstating him to the position from which he has been dismissed.

The judgment is reversed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 25, 1937.