BOARD OF EDUCATION OF THE CITY OF GARFIELD, PROSECUTOR, v. STATE BOARD OF EDUCATION OF THE STATE OF NEW JERSEY AND BEATRICE FISH ROSENTHAL, RESPONDENTS.

Submitted May 4, 1943—Decided August 9, 1943.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *Edward Lukacsko* (*Richard J. Baker,* of counsel).

For the respondents, *Charles Bernstein.*

The opinion of the court was delivered by

PERSKIE, J.  The basic question requiring decision in this case is whether the State Board of Education erred in its determination that respondent school teacher was not barred by her laches to assert her right to be reinstated in her position and to be paid the back salary due to her from the date of her illegal dismissal by the Board of Education of the City of Garfield.

The facts which give rise to the stated question are stipulated.  In light of the defenses interposed (laches) a detailed statement of the facts and procedure followed becomes necessary.

Respondent Beatrice Fish Rosenthal has been for the past eleven years, and presently is, a duly licensed school teacher

in and for this state. She is the possessor of a proper and effective teacher's certificate (*N. J. S. A.* 18:13–2), and has acquired tenure. *N. J. S. A.* 18:13–16. She was employed by prosecutor as a permanent teacher on September 3d, 1929, and thereafter continued to be so employed, save as to leaves of absence granted to her for the school years 1936-1937, 1937-1938, 1938-1939 and 1939-1940, until November 1st, 1940, when, without any charges having been preferred against her (*N. J. S. A.* 18:13–17), she was advised by prosecutor that her services were terminated. She was dismissed, and her position, as a teacher of English in prosecutor's high school, at the salary of $1,350 a year, was given to one Frances Casella, a fellow teacher. Prosecutor's action was based upon the grounds that it "was due to a natural diminution of the number of pupils in the school district" and that although others of its teachers were teaching grades and subjects for which respondent is certified, that respondent "had a lesser term of service to her credit than either the teacher who replaced respondent or any other teacher employed in [its] high school." *N. J. S. A.* 18:13–19.

Respondent immediately (November 1st, 1940) protested, in writing, prosecutor's action. She likewise promptly caused her protest to be brought informally to the attention of an assistant to the State Commissioner of Education (*Cf. N. J. S. A.* 18:3–2 and 18:3–14) who, as it appears in the stipulation, without objection, suggested that no formal petition of appeal be filed with his office because the issue involved in this case was the same as that which was involved in the case of Briefstein *v.* Board of Education of the City of Garfield, then pending before him, and that respondent stipulate with prosecutor that it waive the defense of laches pending disposition of the aforesaid case and the case of Bernstein *v.* Board of Education of the City of Garfield.

On December 6th, 1940, respondent and her counsel appeared before prosecutor. Reading between the lines, the parties were not in accord as to the method of computing the length of service rendered by respondent. To the end of avoiding the costs and expense of this suit, which involves the same question raised in the Briefstein and Bernstein cases,

prosecutor and respondent entered into the following stipulation in writing:

"1. Said teacher shall not be considered in laches by reason of not immediately appealing the above action of the Board, and said defense of laches is hereby waived by the Board, pending the final decisions in the two cases, to wit, Bernstein against Board and Briefstein against Board, respectively, which two cases are now being litigated.

"2. Said teacher shall have the right, without being barred by the defense of laches, to file her appeal within a reasonable time after the rendering of the final decisions in the above two cases by the Court of Last Resort of this State.

"3. In the meantime said teacher may accept such other employment as may be afforded to her by the Board, without prejudice to any rights or remedies which she may have by reason of the action of the Board hereinbefore mentioned. Dated: December 9th, 1940."

This stipulation was signed by the members of the Board of Education and by counsel for the respondent.

The Bernstein case, we are told, was composed. The Briefstein case (which, as we have seen, involved the proper basis for computing length of service) was decided adversely to prosecutor on December 13th, 1941, and no appeal therefrom has been taken by prosecutor.

On April 5th, 1941, respondent, relying upon the decision in the Briefstein case, made demand upon prosecutor that she be reinstated with back pay upon the ground, *inter alia*, that she had a longer term of service than Miss Casella. Apparently, this demand was either ignored or denied.

On April 15th, 1941, respondent filed her petition of appeal with the Commissioner of Education seeking to be reinstated with back pay from the date of her dismissal. Prosecutor answered her petition by re-asserting its stated ground for denying the relief respondent sought; it did not plead laches.

The Commissioner of Education found as a fact that respondent was entitled to "preference" because she had earned a longer term of service than either Frances Casella, who had been appointed to her position, or Violet G. Breston, who had been appointed to the position held by Edith Gortz

Briefstein. Accordingly, the Commissioner adjudged that respondent's dismissal was illegal. He, however, denied her claim to be reinstated and to be paid her back salary because she was guilty of laches.

On appeal, the State Board of Education adjudged that not only was respondent's dismissal illegal but that she was entitled to be reinstated in her position and to be paid her back pay because she was not guilty of laches. Accordingly, the State Board of Education remanded the cause to the Commissioner of Education who, pursuant to its direction, ordered that respondent be reinstated and be paid the back salary due her from the date of her illegal dismissal (November 1st, 1940) to July 1st, 1941, when respondent had been again appointed as a teacher by prosecutor for the school year 1941-1942. Prosecutor was allowed a writ of *certiorari*.

1. The stipulation of December 9th, 1940, is not "contrary to public policy" and is not "illegal." A Board of Education of any municipality in our state may, among other things, "sue and be sued." *N. J. S. A.* 18:6–23. Thus it may and should, if it can possibly do so, avoid the costs and expenses of useless litigation, of multiplicity of suits. Two suits, as we have seen, were already pending against the Board of Education involving the very same issue as was involved in respondent's claims. The then Board of Education, in stipulating with respondent, did what any carefully prudent body would have done in like circumstances. That stipulation has not been repudiated nor rescinded either by the Board of Education which was a party to the stipulation or by any successor boards. We need hardly labor the point that litigation frequently takes many times the annual life of a board of education. The instant case is reasonably illustrative. To hold that the life of the stipulation here, the good faith and validity of which as and when made are not challenged, is co-terminus with the life of the Board of Education which is a party thereto would indeed give rise, to say the least, to a strange concept of righteousness and justice.

The stipulation is free from the infirmity asserted against it. It is not controlled, as suggested, by the principle followed in the line of cases of which *Skladzien* v. *Board of Education*

*of Bayonne,* 12 *N. J. Mis. R.* 602; 173 *Atl. Rep.* 600; *affirmed,* 115 *N. J. L.* 203; 178 *Atl. Rep.* 193, is typical. We are not here concerned with the appointment of one by a Board of Education to an office in its system, the term of which is co-terminus with that of the appointing body.

2. Notwithstanding the fact that laches, an affirmative defense, was not raised below and therefore is not to be considered on appeal (*Cf. Roussel* v. *Giesen,* 118 *N. J. Eq.* 333; 178 *Atl. Rep.* 732) we have determined—as did the lower tribunals, to consider the question on the merits.

Laches ordinarily connotes "delay that works detriment to another." Thus "public interest" requires when, as in the case at bar, respondent was awarded the statutory protection of appealing to the Commissioner of Education and from him to the State Board of Education, that this statutory protection "be invoked with reasonable promptitude" (*Cf. Marjon* v. *Altman,* 120 *N. J. L.* 16; 197 *Atl. Rep.* 724, where about a two year delay was held unreasonable). For laches to operate as a bar to relief otherwise available, in the words of Mr. Justice Heher, "the delay must be for a length of time which, unexplained and unexcused, is altogether unreasonable under the circumstances, and has been prejudicial to the party asserting it or renders it very doubtful that the truth can be ascertained and justice administered." *Stroebel* v. *Jefferson Trucking and Rigging Co.,* 125 *N. J. L.* 484; 15 *Atl. Rep.* (2d) 805.

The detailed proofs in this case fully and satisfactorily explain the reason for the delay. Under the circumstances, that delay was neither unreasonable nor prejudicial to prosecutor. Nor did it obstruct the ascertainment of truth or the administration of justice. Respondent acted with reasonable promptitude. We so find. Respondent was, therefore, not guilty of laches.

3. In light of all that has been written, we "judicially adjudge," as did the Commissioner and the State Board, respondent's dismissal to have been illegal. Accordingly, she was entitled to her back salary. *N. J. S. A.* 40:46–34; *Ratajczak* v. *Board of Education of the City of Perth Amboy,* 118 *N. J. L.* 311; 192 *Atl. Rep.* 591; *affirmed,* 119 *N. J. L.*

433; 196 *Atl. Rep.* 739 (school janitor); *Devlin v. Trenton,* 126 *N. J. L.* 563; 19 *Atl. Rep.* (2d) 812 (justice of Police Court).

We have considered all other matters argued and find them to be without merit.

The action of the State Board of Education is affirmed, with costs.