31 N.J. Super. 558 (1954)
107 A.2d 528
LOUIS J. RUSSO, PLAINTIFF,
v.
HARRY A. WALSH, CHIEF EXAMINER AND SECRETARY OF STATE CIVIL SERVICE COMMISSION, NEW JERSEY STATE DEPARTMENT OF CIVIL SERVICE AND WILLIAM F. KELLY, JR., PRESIDENT OF THE STATE CIVIL SERVICE COMMISSION, NEW JERSEY DEPARTMENT OF CIVIL SERVICE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 13, 1954.
*559 Mr. George Pellettieri for plaintiff.
Mr. Harold H. Fisher, Special Counsel to the Governor, appearing for Grover C. Richman, Jr., Attorney-General of New Jersey, attorney for defendants.
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
This is a civil action in lieu of prerogative writ brought by plaintiff, against defendant, Harry A. Walsh in his capacity as Chief Examiner and Secretary of the Civil Service Commission of New Jersey, and defendant, Kelly, as President of the Civil Service Commission of New Jersey.
The complaint has attached thereto a copy of Executive Order No. 5 issued by the Governor on June 18, 1954, suspending the plaintiff and stating that such suspension is pending hearing and determination of charges for removal as mentioned. The order reads as follows:
"Whereas, on March 18, 1954, I, Robert B. Meyner, Governor of the State of New Jersey, appointed H. Norman Schwarzkopf to examine and investigate the management and affairs of the Division of Employment Security in the Department of Labor and Industry; and
*560 Whereas, the said H. Norman Schwarzkopf having examined and investigated the management and affairs in the said Division and having obtained evidence of the commission of acts of malfeasance and misfeasance by Louis J. Russo, during the period of his employment as Chief Examiner and Secretary of the Civil Service Commission by illegally obtained and receiving a salary of $1,000 per annum from the said Division of Employment Security; and
Whereas, the said H. Norman Schwarzkopf, as the Governor's Examiner, has prepared and filed charges and specifications alleging the said malfeasance and misfeasance in the office of the said Louis J. Russo; and
Whereas, the Governor having deemed it necessary and desirable in the public interest that the said Louis J. Russo should be suspended from his present office of Assistant Chief Examiner in said Department of Civil Service, pending the service, hearing and the determination of the charges of malfeasance and misfeasance aforesaid; It is therefore on this 18th day of June, 1954
ORDERED that Louis J. Russo, Assistant Chief Examiner in the Department of Civil Service be, and he is herewith suspended from such office pending the hearing and determination of charges against him of malfeasance and misfeasance in office.
 /s/ Robert B. Meyner
 Governor
Dated: June 18th, 1954"
The only issue raised by the complaint is whether or not the Governor of the State of New Jersey has the power to suspend plaintiff from his position as Assistant Chief Examiner in the Department of Civil Service pending hearing and determination of charges of malfeasance and misfeasance brought against plaintiff as grounds for his removal. The sole question is therefore one of law.
The proceedings for removal of the plaintiff were instituted by the Governor under and by virtue of the powers granted to the Governor under Article V, Section 4, Paragraph 5 of the New Jersey Constitution. This constitutional provision is as follows:
"The Governor may cause an investigation to be made of the conduct in office of any officer or employee who receives his compensation from the State of New Jersey, except a member, officer or employee of the Legislature or an officer elected by the Senate and General Assembly in joint meeting, or a judicial officer. He may require such officers or employees to submit to him a written statement or statements, under oath, of such information as he may call for relating *561 to the conduct of their respective offices or employments. After notice, the service of charges and an opportunity to be heard at public hearing the Governor may remove any such officer or employee for cause. Such officer or employee shall have the right of judicial review, on both the law and the facts, in such manner as shall be provided by law."
The power of the Governor to remove an officer or an employee of the State of New Jersey is not here under attack. The plaintiff's position, therefore, is that even though the Governor may have the power to remove, nevertheless he does not have the power to suspend the employee pending such removal proceedings.
The suspension ordered by executive order is not a suspension for an indefinite time, but one pending hearing and determination of the principal proceeding to remove the plaintiff. The principle involved is not a novel one. In Vanderbach v. Hudson County Board of Taxation, 133 N.J.L. 499 (Sup. Ct. 1946), affirmed 135 N.J.L. 349 (E. & A. 1947), Mr. Justice Case stated the rule to be that pending removal proceedings, the power to remove includes the power to suspend. The argument had been made that a resolution of suspension preliminary to the preferment of charges and trial thereon, was void for lack of power. Plaintiff had been suspended on August 5, 1942 because of his alleged misconduct, served with charges on September 9, with notice that the charges would be publicly examined into on September 26. The court stated (133 N.J.L. at page 509):
"It is apparent that the suspension on August 5th was a temporary detachment, not by way of discipline or punishment, but as preliminary to and integrated with the statutory procedure for removal. That the board conceived the suspension to be such is evidenced by its proceeding to entertain charges leading to removal and fixing an early date for hearing. We have found that the board did have the right to remove prosecutor upon those charges after hearing and proofs as prescribed by statute, and inasmuch as the acts and omissions upon which the charges were founded had all occurred prior to the time of the suspension, we are of the opinion that the board, under the circumstances of the case, had the right to suspend prosecutor over the period reasonably required for the formulating of charges, the serving of them upon the accused, the bringing on of the hearing and the decision of the issue. The greater *562 power includes the less. Inability of a public board to separate an inferior officer or an employee from his duties temporarily and in good faith pending trial could work serious impairment in the public service (italics added) and is not, we think, to be taken as a legislative intent in all instances. The power of a board so to act where the public interest requires flows impliedly, almost necessarily, from the power specifically granted. We find that the public interest did fairly so require."
Mr. Justice Case discussed and distinguished State ex rel. Tyrrell v. Common Council of Jersey City, 25 N.J.L. 536 (Sup. Ct. 1856) and Levinson v. Mooney, 128 N.J.L. 569 (Sup. Ct. 1942) and concluded that these cases should not be interpreted as a general holding that the power to remove upon charges never includes the power to suspend pending charges.
"In the instant case the power to suspend is of the same inherent nature as is the expressly given power to remove. It works no different results. It is a minor power, necessary to give full effect to the greater. An examination of the charges carries the assumption, almost as a corollary, that a secretary who is guilty of the misconduct therein alleged ought not, in the public interest, to function during the period, necessarily of some duration, while the statutory preliminaries to a determination of the fact are in progress. The suspension was not by way of punishment and in its intendment and effect was not indefinite. It was in its purpose and outworking a detachment from duty pending trial and decision and it finally merged in the judgment to which it was a preliminary incident." (133 N.J.L. at page 512.)
We note with approval that:
"The suspension of an officer pending his trial for misconduct, so as to tie his hands for the time being, seems to be unanimously accepted as fair and often necessary. The power to suspend is generally considered as included in the power of removal for cause, since a suspension is merely a less severe disciplinary measure." Am. Jur. Vol. 43; p. 65, sec. 242.
and
"Notice and hearing are not prerequisite to suspension unless required by statute, and a suspension without such notice does not deprive the officer of property without due process of law." Idem., p. 65, sec. 244.
*563 Authority to the contrary does exist. Mechem on Public Offices and Officers, sec. 453 (1890). In Cull v. Wheltle, 114 Md. 58, 78 A. 820, 823 (Court of Appeals 1910) the court said:
"Far better would it be to possibly suffer some occasional inconvenience or loss to the state by reason of the incompetency or even misconduct of some public official, than to subject one believed to be worthy of election or appointment to the mortification and indignity of being even temporarily removed merely because charges are preferred against him, for it is useless to suggest that an officer is not seriously injured in both his individual and official capacities by a suspension from office, although he may be eventually acquitted of the charges against him. On his trial he has the opportunity of letting the public, as well as the tribunal before whom he is tried, judge whether he is guilty or innocent, but a suspension on charges  in this case not even under oath  would not only deprive him of his office for the time being without a hearing, but almost necessarily carry with it some suggestion of guilt before he has an opportunity to vindicate himself. There is no necessity for such procedure, and we are satisfied that our laws do not contemplate it, however it may be regarded in other jurisdictions."
Nevertheless "As between these two rules * * * we feel constrained to adopt and follow that rule which appears to us will be more conducive to the * * * protection of the public against delinquent and corrupt office holders, and to hold that the power to remove for cause, after a hearing only, includes the power to suspend temporarily pending such hearing." Maben v. Rosser, 24 Okl. 588, 103 P. 674, 681 (Sup. Ct. 1909).
Plaintiff additionally argues that the constitutional provision does not give the Governor power to remove plaintiff from his present position in the state service for alleged misconduct committed while occupying another position which plaintiff no longer holds.
Over the past 20 years, plaintiff has held various posts in the state service. From 1951 to 1954, he served as Chief Examiner and Secretary to the Civil Service Department. On April 19, 1954, by order of the President of the Civil Service Commission, he was returned to the civil service position of Assistant Chief Examiner.
*564 The charges upon which he was suspended relate entirely to acts performed in the years 1948 to 1953, and particularly during his period of service as Chief Examiner and Secretary from 1951 to 1954. Plaintiff contends that the acts with which he is charged were beyond his power to initiate and are beyond his power to revive; that they are wholly completed transactions; all took place under a prior administration before his present re-assignment to his position as Assistant Chief Examiner and therefore the removal proceedings are clearly beyond the purview of the constitutional provision and beyond the scope of the Governor's powers.
Plaintiff cites three cases in support of his position. We do not find their holdings sustain plaintiff's position or interpretation.
In State ex rel. Tyrrell v. Common Council of Jersey City, 25 N.J.L. 536, 543 (Sup. Ct. 1856) the court said:
"The question, whether Tyrrell, having been expelled from the council upon conviction of official corruption, and having been reelected, can be again expelled for the same identical offence, is not properly before the court. If it was, we apprehend there could be no difficulty in deciding it. The council have no power to expel a member for acts committed previous to his election; nor can a man be twice arraigned, tried, convicted, and punished in the same form for the same offence. These are propositions which can hardly be seriously controverted."
In Campbell v. Board of Police Commissioners, 71 N.J.L. 98, 102-103 (Sup. Ct. 1904) we find:
"If the rules of the department do not provide for discharge for offenses or conduct committed prior to the entry upon the service, it is questionable whether, under this statute, a policeman could be dismissed for such a cause.
We are quite clear that the code of discipline of the city of Newark does not cover offenses antedating the commencement of the term of service of the officer.

* * * * * * * *
There being no evidence going to prove that the prosecutor has been guilty, as a policeman, of the violation of any criminal law, there is no justification for the action of the police commissioners in dismissing him from the force * * *."
*565 Finally, in Walsh v. City Council of City of Trenton, 117 N.J.L. 64, 71 (Sup. Ct. 1936) the court stated:
"In arriving at the meaning and scope of the statute under consideration, we hold, from the language of the section itself, that it was the legislative intent to limit the power of inquiry and expulsion to offenses committed while the offender is in the office in which the misdeeds were done * * * because, as we view it, each term of office is a separate and distinct entity, and, applying the statute * * * to the facts before us, we conclude that the resolution dismissing Walsh from the office of councilman of Trenton must be set aside."
An analysis of the language of the broad constitutional powers granted the Governor under Article V, Section 4, paragraph 5 gives this court no basis for holding that the people of New Jersey by their vote intended to limit the Governor's power of inquiry and expulsion to acts committed while plaintiff was in the present office and not in another office. We cannot conceive that the people intended by voting for the 1947 Constitution to condone and forgive in futuro a public servant who might be faithless to his service on the mere chance or design of skipping from one office in which he committed crimes to another office in which he committed none. It is a claimed constitutional sanctuary difficult to conceive and more difficult to uphold. Allen v. Tufts, 239 Mass. 458, 131 N.E. 573, 132 N.E. 322, 17 A.L.R. 279 (1921).
Judgment will be entered for defendants.